UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national banking association,<br><br>                    Plaintiff,<br><br>     vs.<br><br>BUILDERS BANK, an Illinois banking corporation,<br><br>                    Defendant. | 08 C 5648<br><br>Judge Feinerman |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff U.S. Bank National Association filed this diversity action against Builders Bank, alleging breach of contract. After the court denied Builders Bank's motion to dismiss, *see* 2009 WL 2985952 (Sept. 16, 2009) (Dow, J.), the parties conducted discovery, and now have filed cross-motions for summary judgment. Docs. 51, 57. U.S. Bank's motion is granted in part (as to breach) and denied in part (as to damages), and Builders Bank's motion is denied.

## **Background**

The following facts are undisputed, either by the parties' agreement or because a party's objection to the fact failed to comply with Local Rule 56.1(b)(3). In 2006, U.S. Bank and Builders Bank jointly loaned $5,190,000 to non-party Gaviota Partners II, LLC. The loan is guaranteed by, among others, non-parties Robert Abassi and Scott Ayres. The banks' relationship with respect to the loan is governed by a Participation Agreement, which obligates each bank to fund fifty percent of the loan and designates Builders Bank as the "lead lender," according it certain rights and obligations regarding the loan's administration. The Participation

Agreement incorporates the loan's terms, which at its inception called for a maturity date of September 16, 2007, and a minimum interest rate of 8.25 percent.

Section 4.2 of the Participation Agreement requires Builders Bank to obtain U.S. Bank's written consent prior to changing the loan's interest rate or maturity date:

> Notwithstanding Section 4.1, Lead Lender [Builders Bank] shall not take the following actions (each a "Major Decision") with respect to the Loan without the prior written consent of Participant [U.S. Bank] …
>
> Amend, modify or waive any provision of the Loan Documents so as to (a) reduce or forgive the amount of any interest or principal payable required under the Loan Documents; (b) *change or modify the interest rate* under the Loan Documents; (c) *extend the maturity date of the Loan*; (d) postpone or defer any date for payment of principal or interest under any Loan Document; or (e) increase the principal amount of the loan except for (x) Advances to be made after the date hereof pursuant to the Loan, and (y) any Protective Advances.

Participation Agreement (Doc. 1-2) at 6 (emphasis added). Pursuant to Section 4.2, Builders Bank twice asked for and received U.S. Bank's consent to extend the maturity date. With those extensions, the new maturity date became March 16, 2008.

Gaviota failed to repay the loan by March 16, 2008, and shortly thereafter Builders Bank sent a letter formally notifying Gaviota and its guarantors of the default. On May 13, 2008, U.S. Bank informed Builders Bank of its view that foreclosure proceedings should be commenced. Builders Bank met with Abassi, one of the guarantors, on May 22, 2008. On May 29, 2008, a Builders Bank employee sent a U.S. Bank employee an email that read in part as follows:

> As we discussed, [Builders Bank] had a meeting at the end of last week with Robert Abassi, one of the Sponsors on the Gaviota … loan. At that meeting, a plan was agreed upon which would require Mr. Abassi to start making payments to the Bank, beginning June 15th of 2008. The first payment is in the amount of $250,000. Per the agreement with the Borrower, there are four (4) payments due for the balance of the year which approximate $1.1 mm (an additional $250,000 due July 15th, $310,440 due September 15th and another payment estimated at $310,440 due December

> 15th — payment amount required will be sufficient to maintain the LTV [loan to value] at 80%).
>
> Provided that the first payment in the amount of $250,000 is made to [Builders Bank], it is [Builders Bank's] intention to buy back the participation with US Bank. In the event that the payment is not made, [Builders Bank] will begin foreclosure proceedings, as we discussed with you earlier.

Builders Bank received the initial payment of $250,000 on June 15, 2008. Contrary to the "intention" expressed in the May 29 email, however, Builders Bank did not "buy back" U.S. Bank's participation in the loan. Instead, without obtaining U.S. Bank's written consent (prior or otherwise), Builders Bank entered into another extension agreement with Gaviota, dated July 8, 2008, that extended the loan's maturity date to August 5, 2011, and reduced the minimum interest rate to six percent.

The parties agree that Builders Bank entered into the July 2008 extension agreement in an effort to avoid the immediate and certain loss associated with a foreclosure and to preserve the possibility that Gaviota would repay the loan in full. In July 2008, U.S. Bank's participation in the loan amounted to $2,345,000. Since then, Gaviota has made payments on the loan, reducing U.S. Bank's participation to $2,008,590.58 as of September 10, 2010.

U.S. Bank filed this action on October 3, 2008. The complaint alleges that Builders Bank breached Section 4.2 of the Participation Agreement by extending the loan's maturity date and lowering the interest rate without U.S. Bank's consent. U.S. Bank asks the court to require Builders Bank to purchase U.S. Bank's participation in the loan, to pay a small sum of accrued interest, and to reimburse U.S. Bank for its attorney fees and costs.

**Discussion**

The Participation Agreement provides that it shall be governed by Illinois law. Under Illinois law, a plaintiff alleging breach of contract must show: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)). The parties' cross-motions for summary judgment contest the third and fourth elements: (1) whether Builders Bank committed (as U.S. Bank contends) or did not commit (as Builders Bank contends) a compensable breach of the Participation Agreement; and (2) assuming a compensable breach, whether U.S. Bank sustained (as U.S. Bank contends) or failed to sustain (as Builders Bank contends) damages.

### A. Whether Builders Bank Committed a Compensable Breach as a Matter of Law

Section 4.2 of the Participation Agreement unambiguously provides that Builders Bank must obtain U.S. Bank's written consent before extending the maturity date or changing the interest rate on the Gaviota loan. Builders Bank concedes U.S. Bank did not consent to the July 2008 extension agreement, but contends that two other provisions of the Participation Agreement establish that it committed no compensable breach.

The first provision is Section 4.4, which states:

> If [Builders Bank] sends a notice of default (excluding system-generated past due notices) to Borrower, [Builders Bank] shall promptly send a copy thereof to [U.S. Bank]. [Builders Bank] may take such steps as are needed to protect the Collateral and may otherwise exercise remedies under and enforce the Loan Document; provided, however, that prior to filing a foreclosure [Builders Bank] shall consult with [U.S. Bank] on a mutually agreeable course of action for not less than five (5) Business Days. *If the parties are unable to reach an agreement on a mutually agreeable course of*

> *action, [Builders Bank] may thereafter foreclose the Mortgage and take such other actions as in [Builders Bank's] judgment are appropriate.* [U.S. Bank] shall take no action to enforce the Loan Documents or collect the Loan (including by exercise of setoffs), all such rights to act on behalf of the holder of the Loan being vested in [Builders Bank].

Participation Agreement (Doc. 1-2) at 6 (emphasis added). Builders Bank contends that Section 4.4 operates as follows: If Gaviota defaults, and U.S. Bank and Builders Bank are unable to reach consensus on next steps, Builders Bank has the unfettered discretion to restructure the loan, including in ways (extending the maturity date and altering the interest rate) that otherwise would require U.S. Bank's prior written consent under Section 4.2. That is, Builders Bank believes that Section 4.2 applies only to performing loans, and that when the borrower defaults, Section 4.4 lifts the restrictions on unilateral action otherwise imposed by Section 4.2. To U.S. Bank's complaint that this interpretation makes U.S. Bank a "captive participant" to defaulted loans, particularly those restructured without its approval, Builders Bank responds that this is a risk inherent in the Participation Agreement.

Builders Bank's interpretation turns on the penultimate sentence of Section 4.4, the one providing that if the parties cannot agree on a course of action following default, Builders Bank "may thereafter foreclose the Mortgage and take such other actions as in [its] judgment are appropriate." According to Builders Bank, the phrase "may thereafter" applies independently to both "foreclose the Mortgage" and "take other such actions," giving it the discretion to unilaterally pursue any of three options: (1) foreclosure; (2) foreclosure together with "other" appropriate actions; or (3) "other" appropriate actions without foreclosure. The course of action taken by Builders Bank with respect to the Gaviota loan—extending the maturity date and reducing the interest rate, without pursuing foreclosure—falls within what Builders Bank believes to be its third option. U.S. Bank respondes that Section 4.4, properly interpreted, gives

Builders Bank only the first two options. It submits that because Section 4.4 does not permit Builders Bank to take "other" appropriate actions without foreclosure, and because Builders Bank did not foreclose on the Gaviota loan, Section 4.4 did not relieve Builders Bank of its obligation under Section 4.2 to obtain U.S. Bank's written consent before extending the loan's maturity date and reducing the interest rate.

U.S. Bank's interpretation is correct, and the reason lies in the use of "and" rather than "or" in the portion of Section 4.4 discussed above. Under Illinois law, "[t]he word 'and' in its common meaning expresses a relation, an addition, and whether used to connect words, phrases or sentences, it must be accepted as binding together and as relating the one to the other." *Hailey v. Cnty. Bd. Of Sch. Trs. of Tazewell Cnty.*, 157 N.E.2d 570, 574 (Ill. App. 1959). It follows that Section 4.4's use of the conjunctive "and" in the phrase "may thereafter foreclose the Mortgage *and* take such other actions as in [its] judgment are appropriate" (emphasis added) means that Builders Bank unilaterally can take "other" appropriate actions only in conjunction with foreclosure, not absent foreclosure. *See Cont'l Nat'l Am. Ins. Co. v. Aetna Life & Cas. Co.*, 542 N.E.2d 954, 958 (Ill. App. 1989) ("The 'and' separating 'while hired or borrowed by you' and 'used exclusively in your business' binds the phrases together, creating a relationship between them rather than an expression of separate elements, as though the phrases read 'while hired or borrowed by you and *while* used exclusively in Smith's business.'"); *United States v. Wood*, 160 F. Supp. 2d 912, 913 (N.D. Ill. 2001) (where the conjunctive "and" is used, "the two phrases in [question] should be read together … not in isolation"); *Jedi's Garden Family Rest., Inc. v. Karuntzos*, 1988 WL 71730, at *2 (N.D. Ill. June 28, 1988) (where "two clauses within the questioned provision are conjunctive[, they] should be read together"). Had the parties intended to allow Builders Bank, in the default context and absent foreclosure, to take unilateral

actions of the kind otherwise requiring U.S. Bank's written consent under Section 4.2, they would have deployed the disjunctive "or" rather than the conjunctive "and," with Section 4.4 providing that Builders Bank "may thereafter foreclose the Mortgage *or* take such other actions as in [its] judgment are appropriate." *See Nautilus Ins. Co. v. Mona Fabrication Co.*, 2009 WL 1211349, at *3 (N.D. Ill. May 5, 2009) ("In order to accept MCC's interpretation of the disputed phrase, the court would have to replace the conjunctive term 'and' with the disjunctive term 'or.'"). Accordingly, Section 4.4 does not save Builders Bank from the conclusion that it breached Section 4.2 by entering into the July 2008 extension agreement without obtaining U.S. Bank's written consent.

The second provision invoked by Builders Bank is Section 4.8, which states:

> Neither [Builders Bank] nor any of its Affiliates, shareholders, directors, officers, or employees shall be liable to [U.S. Bank] for any obligation, undertaking, act or judgment of Borrower or any other person, or for any error of judgment or any action taken or omitted to be taken by [Builders Bank] in administering the Loan *in accordance with this Agreement*. The duties of [Builders Bank] shall be mechanical and administrative in nature. [Builders Bank] shall not be deemed to be a trustee, fiduciary or agent for [U.S. Bank] in connection with the Loan. [Builders Bank] will exercise the same care in administering the Loan as if it had retained the Loan for its own account but *shall not be liable for any error in judgment or for any action taken or omitted to be taken by it, except for gross negligence or willful misconduct*. Each party hereto bears the full risk of loss with respect to its interest in the Loan.

Participation Agreement (Doc. 1-2) at 7 (emphasis added). Builders Bank contends that Section 4.8 exculpates it from liability for any breach of the Participation Agreement except in instances of "gross negligence or willful misconduct." It submits that because its decision to restructure the loan and abstain from foreclosure "was by far the more prudent of the two courses of action contemplated" (Doc. 61 at 5), it did not act with gross negligence or willful misconduct, which means that Section 4.8 frees it from liability.

Builders Bank's submission misinterprets Section 4.8. Although a contract may limit one party's liability to the other, *see Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 850-51 (Ill. App. 2003), an exculpatory provision's scope depends on its text, *see Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 530 (Ill. 2008). The first sentence of Section 4.8 provides that Builders Bank shall not be liable to U.S. Bank "for any error of judgment or any action taken or omitted to be taken by [Builders Bank] in administering the Loan *in accordance with this Agreement*" (emphasis added). As the emphasized text plainly indicates, the provision exculpates Builders Bank only for actions undertaken "in accordance with this Agreement." Because, as shown above, Builders Bank's unilateral decision to extend the loan's maturity date and reduce the interest rate violated the Participation Agreement, Section 4.8 does not protect it from liability. *See Buenz*, 882 N.E.2d at 533 (where a provision "expressly limits itself[,] … courts will not strain, simply because the contract also contains [expansive] 'any and all' language, to read into that contract indemnification for" all possible actions by the indemnified party).

Builders Bank ignores the first sentence of Section 4.8, and instead focuses on the penultimate sentence, which provides that it "shall not be liable for any error in judgment or for any action taken or omitted to be taken by it, except for gross negligence or willful misconduct." Builders Bank's implicit assumption is that the "in accordance with this Agreement" limitation in the provision's first sentence does not govern to the penultimate sentence. That is a most unnatural, and in fact impossible, reading of Section 4.8. The penultimate sentence does not cover situations outside the scope of the first sentence. To the contrary, the first sentence references "any error of judgment or any action taken or omitted to be taken by [Builders Bank] in administering the Loan," while the penultimate sentence references "any error in judgment or

… any action taken or omitted to be taken by [Builders Bank]." Given this parallel phrasing, the "in accordance with this Agreement" limitation in the first sentence carries forward through the entire provision, including the penultimate sentence.

Any doubt on this point would be resolved, as a matter of law, in U.S. Bank's favor. Illinois law holds that "exculpatory clauses are not favored and must be strictly construed against the benefitting party." *Harris v. Walker*, 519 N.E.2d 917, 919 (Ill. 1988); *see also Berwind Corp. v. Litton Indus., Inc.*, 532 F.2d 1, 4 (7th Cir. 1976) (Illinois law). Thus, even if it were uncertain as a purely textual matter whether the "in accordance with the Agreement" limitation in Section 4.8's first sentence carried forward to its penultimate sentence, the ambiguity would be resolved against Builders Bank. *See Plambeck v. Greystone Mgmt. & Columbia Nat'l Trust Co.*, 666 N.E.2d 670, 674 (Ill. App. 1996) ("While there may be some ambiguity as to the scope of the exemptions contained in the lease, exculpatory clauses in lease instruments are to be strictly construed against the party for whose benefit they have been drawn.").

Accordingly, it is beyond dispute that Builders Bank breached the Participation Agreement by entering into the July 2008 extension agreement without U.S. Bank's written consent. U.S. Bank is entitled to summary judgment on the breach element of its claim.

### B. Whether U.S. Bank Sustained Damages as a Matter of Law

U.S. Bank contends that it "has proven its right to damages as a matter of law in the amount of $2,028,530.32." Doc. 52 at 9. Builders Bank counters that because Gaviota might repay the loan in full on August 5, 2011, the new maturity date, "it is a certainty that [U.S. Bank] has not suffered any measurable damages," which means that it (Builders Bank) is entitled to summary judgment. Doc. 58 at 9-10. Both parties are wrong.

As one of U.S. Bank's witnesses acknowledged at her deposition, U.S. Bank will not have sustained $2 million in damages if Gaviota repays the loan by the maturity date. While U.S. Bank contends that it is entitled to "restitution" based on the email sent by a Builders Bank employee on May 29, 2008, expressing Builders Bank's "intention" to "buy back" U.S. Bank's participation in the loan, the complaint (Doc. 1) does not purport to state a claim for breach of *that* alleged promise, and "a plaintiff may not amend its complaint through arguments in a summary judgment brief." *ExxonMobil Oil Corp. v. Amex Constr. Co., Inc.*, 702 F. Supp. 2d 942, 966 (N.D. Ill. 2010). In any event, it is far from clear on this record whether the employee's email constitutes or ever ripened into an enforceable contract. On the other hand, if Gaviota does not repay the loan in full, U.S. Bank will have suffered ascertainable damages, with the amount depending in part on the degree to which Gaviota falls short and in part on the sums that would have been generated if, as U.S. Bank urged, a foreclosure had been pursued in 2008. And even if Gaviota repays the loan in full, U.S. Bank may have suffered at least some harm from having its $2 million tied up for the past three years.

Accordingly, the record does not definitively establish, with the certainty required at summary judgment, whether U.S. Bank has or has not been damaged by Builders Bank's breach and, if so, the extent of its damages. Damages will be a question for the jury at trial. This result is consistent with the court having granted summary judgment to U.S. Bank on the breach element of its contract claim. *See* Fed. R. Civ. P. 56(a) (permitting summary judgment on "part" of a claim); Fed. R. Civ. P. 56(g) (court may grant summary judgment "stating any material fact … that is not genuinely in dispute and treating the fact as established in the case"); Wright, Miller & Kane, *Federal Practice and Procedure*, § 2736, at 306 (1998) ("it [is] apparent that when there is a genuine issue as to damages but not as to the ultimate liability of the nonmoving

party, an interlocutory summary judgment is appropriate") (citing cases); *Int'l Paper Co. v. Androscoggin Energy LLC*, 2005 WL 2429794, at *2 (N.D. Ill. Sept. 30, 2005).

## Conclusion

To summarize, U.S. Bank's motion for summary judgment is granted as to breach and denied as to damages, and Builders Bank's motion for summary judgment is denied.

March 25, 2011

_____
United States District Judge